JORDAN et al. v. MARCANTELL et al.

(Court of Civil Appeals of Texas. Galveston. April 11, 1912.)

1. HUSBAND AND WIFE (§§ 266, 274, 269*)—AGREEMENT AS TO SEPARATE PROPERTY—VALIDITY.

Where a husband and wife agree that certain horses and their increase shall be the wife's separate property, and he brands them with her recorded brand, the agreement is binding upon him and his heirs and invalid only as to community creditors.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 925–928, 1026–1031, 953–967; Dec. Dig. §§ 266, 274, 269.*]

2. DESCENT AND DISTRIBUTION (§ 90*)—FRAUDULENT CONVEYANCES (§ 174*)—TRANSACTIONS BETWEEN HUSBAND AND WIFE—RIGHT TO RECOVER BACK.

Where a husband gives his wife certain horses and brands them with her recorded brand for the purpose of defrauding creditors, neither he nor his heirs can take advantage of his fraud and recover the title from. her.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 351–358, 368–381; Dec. Dig. § 90;* Fraudulent Conveyances, Cent. Dig. §§ 530, 531, 533–548; Dec. Dig. § 174.*]

3. HUSBAND AND WIFE (§ 257*)—COMMUNITY PROPERTY—ACTION BY HEIRS—INSTRUCTIONS.

Where, in an action by heirs of the deceased husband to partition and recover certain horses from the wife, alleged to have been community property, there was evidence that an agreement was made between the husband and wife that the increase of the original stock given by the husband to his wife should be her separate property, and that it was branded with her brand, it was improper to instruct that all increase of any separate property that she may have owned became community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 904–908, 910; Dec. Dig. § 257.*]

4. HUSBAND AND WIFE (§ 273*)—WIFE'S SEPARATE PROPERTY—INCREASE OF LIVE STOCK.

Although the increase of live stock owned by the wife and existing before the death of her husband is community property in the absence of an agreement otherwise between them, the increase of her live stock after his death is not community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec Dig. § 273.*]

Error from District Court, Hardin County; L. B. Hightower, Judge.

Action by A. T. Marcantell and others against Theodocia Jordan and others. From a judgment for plaintiffs, defendants bring error. Reversed and remanded for new trial.

F. Campbell, of Livingston, for plaintiffs in error. Jno. L. Little, of Kountze, for defendants in error.

PLEASANTS, C. J. This suit was brought by defendants in error, who are the heirs at law of John Jordan, deceased, against the plaintiff in error Theodocia Jordan to partition certain personal property described in the petition and alleged to have been the community property of the said John Jordan and his surviving wife, the said Theodocia. Brack Cotton· was made party defendant upon allegation that he had, with full knowledge of plaintiffs' right and title to said property, purchased a portion thereof from Mrs. Jordan. The property sought to be partitioned is described in plaintiffs' petition as follows: 50 head of stock horses branded J–JJ on right hip, and valued at $1,250; 150 head of stock cattle branded in the brand above shown and reasonably worth the sum of $1,500; 50 head of sheep worth $100; and 250 head of range hogs worth $500. Defendants in the court below answered by general and special exceptions and general denial and by special plea, in which it is averred that the property in question was the separate property of the defendant Theodocia Jordan, and that plaintiffs have at all times since the death of their father, John Jordan, in 1897, recognized the possession and ownership of said property in Mrs. Jordan. Defendants also pleaded the statutes of limitation of two, four, and ten years in bar of plaintiffs' suit. For the purposes of this opinion, the foregoing is a sufficient statement of the pleadings upon which the cause was tried in the court below. The trial with a jury resulted in a verdict and judgment in favor of plaintiffs for one-half of all the property described in the petition. Commissioners were appointed and directed to partition said property in accordance with the judgment, giving one-half to defendants, and dividing the remaining one-half between the plaintiffs.

The plaintiff in error Mrs. Jordan testified, in substance, that all of the property in controversy was her separate property; that the original stock of horses, of which the horses in controversy in this suit are the increase, was bought by her with money received from her mother's estate; that in 1884 the brand J–JJ was recorded in her name, and it was agreed between herself and her husband that the increase of these horses should be branded in this brand and should be and remain her separate property. John Jordan's brand was JJ. He owned a

stock of cattle in this brand which he mortgaged to his wife in 1896 to secure a loan of $200. She testified that when the loan became due in settlement thereof her husband turned the cattle over to her and changed the brand thereon into her brand, J–JJ. This was done shortly before his death in 1897. These cattle and their increase are the cattle in controversy.

Plaintiffs in the court below introduced testimony tending to show that the J–JJ brand was recorded in Mrs. Jordan's name by her husband and the horses and cattle owned by the community branded with that brand by him for the purpose and with the intent of defeating a claim on the part of his sisters to an interest in the cattle and to defeat the collection of a forfeited appearance bond on which he was a surety.

[1] The horses being all in a brand recorded in Mrs. Jordan's name and not in the brand used by her husband, if, as she testifies, the horses of which the present stock is the increase were bought by her with money received from her mother's estate, and her husband agreed that the increase of said horses should remain her separate property, and in confirmation of their agreement he branded them in her brand, they are her separate property. Such agreement between the husband and wife would be binding upon him and his heirs, and could only be held invalid as to community creditors.

[2] For the purpose of contradicting Mrs. Jordan's testimony in regard to this agreement with her husband, plaintiffs introduced the testimony of B. L. Jordan, who testified that the J–JJ brand was recorded in Mrs. Jordan's name and the horses placed and kept in that brand for the purpose of defeating the obligation of John Jordan as a surety upon the forfeited appearance bond of his brother-in-law, Henry Cotton. If her husband put the title to the property in her for the purpose of defrauding his creditors, he would not be permitted to take advantage of his fraud and to recover the title from her, and the plaintiffs in this suit, who claim under him as heirs, are in no better position. Farrell v. Duffy, 5 Tex. Civ. App. 435, 27 S. W. 20.

The defendants in the court below requested the court to instruct the jury, in substance, that if they believed from the evidence that the title to any of the property in controversy was placed in Mrs. Jordan by her husband, John Jordan, for the purpose of defeating his obligation upon a bond, that neither he nor his heirs could recover from Mrs. Jordan the title so placed in her. This is a well-settled rule of decision in this state, and the court should have so instructed the jury.

[3] The charge of the court in which the jury are instructed that all increase of any separate property that Mrs. Jordan may have owned became community property was misleading, when applied to the facts of this case, because it wholly ignores the issue raised by the evidence as to the agreement on the part of John Jordan that the increase of the stock owned by Mrs. Jordan should be her separate property, and the effect of such agreement in connection with the fact that the increase was branded in Mrs. Jordan's brand.

[4] It is further misleading because it includes the increase of the stock since the death of John Jordan, which occurred 13 years before this suit was brought. It is clear that only increase of stock which was the separate property of Mrs. Jordan which came into existence before the death of her husband would be community, and if this increase was given to Mrs. Jordan by her husband, and the title placed in her by him, her separate brand being placed thereon, such increase would be her separate property. We have not thought it necessary to discuss the several assignments of error in appellants' brief in detail.

We think the errors above indicated require a reversal of the judgment of the court below, and that the cause be remanded for a new trial, and it has been so ordered.

Reversed and remanded.