### JAMISON v. WELLS et al. (No. 6650.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 4, 1922. Rehearing Denied Jan. 25, 1922.)

**1. Husband and wife ⬤═249—Prima facie, lands conveyed to wife in her name during marriage, constitute "community property."**

Prima facie, lands conveyed by deeds executed and delivered to a wife in her name during marriage constitute community property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Community Property.]

**2. Deeds ⬤═56(4)—Husband's execution of deed to wife constitutes delivery, though not registered.**

Ordinarily, the execution of a deed by a husband to his wife, though he retains possession thereof, constitutes a complete delivery, whether registered by him or not, in the absence of a contrary intention.

**3. Deeds ⬤═59(1)—Registration is delivery.**

The registration of a deed is considered a delivery thereof.

**4. Trusts ⬤═44(3)—Trust under absolute deed must be clearly established.**

While a trust may be established under an absolute deed by parol testimony, proof of the existence of such agreement must be very clear and corroborated.

**5. Fraudulent conveyances ⬤═174(1)—Equity will not grant relief to parties to trust intended to defeat creditors.**

When a trust on an absolute deed between husband and wife predicated on a fraudulent intent to defeat creditors is sought to be established, courts of equity will not give the parties thereto or their heirs any relief.

**6. Deeds ⬤═56(4)—Rule that husband's execution of deed to wife is sufficient delivery not changed by act giving wife exclusive control of separate estate.**

The rule that a husband's execution of a deed to his wife is a sufficient delivery, though he still holds the deed, was not changed by the statute giving the wife exclusive control of her separate estate, and denying the husband any rights therein except by her permission or assent.

**7. Deeds ⬤═194(1)—Agreement that wife should hold title in trust for husband to defeat creditors presupposes acquiescence in a complete delivery.**

A secret agreement between a husband and wife that land conveyed to the latter was

to be held by her in trust for him to defeat their creditors presupposes an acquiescence to a complete and perfect delivery, whatever be the purpose.

**8. Trusts ⊂⇒17, 18(1)—Cannot be ingrafted on duly executed and delivered deed by subsequent oral understanding.**

No trust can be ingrafted on a deed, duly executed, registered, and delivered, by any subsequent oral understanding that the property was to be reconveyed when the deed had served grantor's purpose.

**9. Descent and distribution ⊂⇒90(1)—Fraudulent conveyances ⊂⇒174(3)—Neither husband agreeing with wife to place title in her name with intent to defraud existing creditors, nor his heirs, can recover from her or her heirs.**

Under Rev. St. arts. 3966, 3967, neither a husband, who agrees with his wife to place the title to property conveyed by absolute deed in her name with intent to delay, hinder, or defraud existing creditors, nor his heirs, can recover the property from the wife or her heirs.

**10. Fraudulent conveyances ⊂⇒172(1)—Where wife did not know of husband's purpose to defraud creditors, conveyance to her passed legal title, whatever his purpose.**

Where a wife, to whom land was conveyed by her husband, was not cognizant, prior to the execution and delivery of the deed, of his intent to defraud existing creditors, such conveyance passed the legal title to her, whatever his purpose, and regardless of any statement or subsequent oral agreement to constitute her the fraudulent vendee for such purposes.

**11. Partition ⊂⇒12(3)—Wife's heir not entitled to partition of homestead as against surviving husband's right of occupation.**

Where, by virtue of an absolute deed from a husband to his wife, a complete separate estate for her sole benefit vested in her, her only surviving heir, a sister, inherited an undivided half interest, under Rev. St., art. 2462, and would be entitled, under article 3425, to have the homestead partitioned, there being no minor children, but, under article 3429, it cannot be partitioned so long as the husband lives and elects to occupy it as a homestead.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Suit by Mittie Jamison against Lee K. Wells and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered in part and affirmed in part.

Douglas & Carter, of San Antonio, for appellant.

Leonard Brown, of San Antonio, for appellees.

COBBS, J. This is a suit brought by appellant to partition certain real property between her and appellee, and for rents, on the ground that the property situated in San Antonio, Tex., was the separate estate of her deceased sister, Emma Wells, the wife of appellee Lee K. Wells, who died intestate, February 17, 1920, without issue, and leaving appellant, her sister, the sole surviving heir to her estate; and against F. H. Mayfield and Ella Mayfield, who, it was alleged, were claiming some interest in the land.

Appellee Wells' defense was general denial, and that his deed to his wife, conveying the property in question to her, though absolute on its face and recorded by him, was never delivered to her, and in fact was not intended to take effect as an absolute deed. It was made to her at a time when he was engaged in a printing business, having a partner therein, which business was unsuccessful, and being heavily in debt and fearing suits might be brought against him, he placed the property in his wife's name, with the express intention that no title was to pass, but that she was to merely hold the legal title thereto as trustee for him, and would on demand convey the title to him. The property was at the time the homestead of himself and wife, and he claims his homestead right to lots 20 and 21 in block 2, new city block 1661.

The answer of appellees F. H. and Ella Mayfield was that they purchased lots 18 and 19, in block 2, in new city block 1661, Roosevelt place addition, from L. K. Wells, appellee, and Emma K. Wells, and executed their note in the sum of $1,400, payable in monthly installments, and for the security of which a vendor's lien was reserved in the deed; that they have paid the sum of $500 on the note, but have made no payment on the note since February 17, 1920, and pray for such relief as they may be entitled to in law and equity.

The case was tried by the court who filed, at the request of appellant, findings of fact and conclusions of law besides the statement of facts filed. The judgment of the court was in favor of appellees F. H. and Ella Mayfield for the land claimed by them, to wit, lots 18 and 19 in block 2, new city block 1661, and in favor of appellee Lee K. Wells for the balance of the unsold land, to wit, lots 20 and 21, in block No. 2, new city block 1661, and that the prayer for partition of appellant be denied. Appellant is shown to be the sole surviving sister and heir of Emma Wells, deceased, who was the wife of Lee K. Wells, appellee.

The main error assigned questions the ruling of the court in holding that no title passed to Emma Wells, wife of appellee Lee K. Wells, by virtue of his deed to her, and thereby did not become her separate property, but that at the time of her death was the community property between them, and under the law of descent and distribution

vested the absolute title in her husband, appellee, and that appellant, her sister, who was the sole surviving heir, acquired no interest in this property.

[1] The material facts established are that Emma Wells, the deceased wife of Lee K. Wells, appellee, acquired this property under several deeds during their marriage, and the apparent legal title, therefore, was never in appellee. The first of these deeds was a general warranty deed from T. H. C. Hyde to Emma Wells, dated 28th of August, 1908, conveying the lands upon a recited consideration of $675 paid by her. The second is another deed from the Highland Improvement Company, for a recited consideration of $225, to her conveying lot 20, described in the foregoing deed, but, having been disposed of by sale prior to Emma's death, is' eliminated from this controversy. Prima facie, the foregoing deeds to Emma Wells, the deceased wife, executed and delivered to her in her name, constituted community property between them.

[2-5] Appellant asserts her claim to one-half of the property on the ground that it was the separate estate of her deceased sister, Emma Wells, made so by the deed of appellee Wells to his wife, dated the 12th day of May, 1914, conveying the property for a recited consideration of $5 and love and affection he bore to her as his wife. This deed was filed for record on the very same day it was executed by appellee. The proof showed that all renditions and payments of taxes were by appellee, though the assessments were made in his wife's name. It was also shown the deed was made to her by him in contemplation of his insolvency, for the expressed purpose to defeat the collection of debts, and that she was to hold the title thereto in her name in trust to be conveyed to him upon his request. In due time he paid off his debts, and the purposes for which said deed was made thus ceased to be of any further value to protect him against his creditors. He was largely in debt at the time, and, fearing his partner in business would still further involve him, he consulted a lawyer, stating his purpose, and in order to protect him against his creditors present, and especially in the future, and to save the property, though it was their homestead, the deed was prepared for him, which he then and there executed and carried in person to the county clerk and caused its registration. Her name and address were on the deed, and when registered it it was mailed to her and appellee, and appellee retained possession thereof ever afterwards. As said, he caused its registration, and rendered it for taxation purposes in his wife's name, and the taxes were paid by him. Ordinarily the execution of a deed itself by the husband to the wife, though he retains possession thereof, constitutes a complete delivery, whether it is registered by him or not, in the absence of a contrary intention. So, also, is the registration of a deed considered a delivery. The facts are sufficient to show a delivery for the purposes stated. But the contention here is that the agreement between him and his wife was that the execuion of the deed was to be made to hinder, delay, and defeat past and future creditors of the appellee, and the land, when the deed had served his purposes, was to be by her transferred to him. The creditors were paid off, and for more than five years after its execution and before her death no change was made in the status of the title and the holding, nor did he ever seek a conveyance from her.

The only testimony offered to defeat the passage of full title by the execution of the deed was the mala fides in the transaction and the intention that the deed was to serve as a cover to conceal the title to the property and place it beyond the creditors' reach. To what extent it served such purpose is not known, nor whether it enabled them to hold it thus until all his debts had been paid is a matter of conjecture, but of no particular consequence. Even then it is not shown that he requested, during her lifetime, a deed, but permitted the title to thus remain in statu quo.

The proof fails to show an antecedent agreement, and that his wife knew he was going to see a lawyer for any purpose or advice in connection with the transaction. It is nowhere shown that prior to the execution of or the filing of the deed for registration she had agreed with him she would hold the legal title in trust for him against their creditors.

While a trust may be established upon an absolute deed by parol testimony, especially such as contended for here as made between the husband and wife for the purposes stated it should be very clear as to the agreement itself and corroborated. Whitfield v. Duffie, 105 S. W. 324. But when such trust is sought to be established, predicated upon a fraudulent intent to defeat existing creditors, the courts of equity are never open to give such parties or their heirs any relief. There is testimony showing that Emma Wells, the wife, stated she regarded the property as the community property of herself and her husband, but there is no statement of any prior trust agreement from her to that effect. The status of title in her was for more than six years undisturbed by any one.

[6-9] There is no merit in appellee's contention that the established rule of construction in existence prior to 1913, that a husband's deed to his wife after its execution, and held by him, was a sufficient delivery, was changed by the amendment respecting the wife's separate estate which gives her

the control thereof denies the husband any kind of right, possession, management, or control except by her permission or assent. According to appellee's own contention, there was a secret agreement between him and his wife that his title was to be held by her in trust for him to defeat their creditors, which presupposes an acquiescence to a complete and perfect delivery, whatever be the purpose. Trusts must be ingrafted on deeds by the clearest and best proof. No trust could be ingrafted on a deed duly executed, registered, and delivered by any subsequent oral understanding of the kind here sought. Such an agreement must precede the execution and the delivery of the deed, not after. It must be based upon a precedent agreement, not upon a subsequent oral promise or agreement. It must be a part of the real consideration, and not a subsequent one. Aside from that, the facts show that the husband and wife, having knowledge of his intent, undertook by this agreement to place the title to the property in her name "with intent to delay, hinder, or defraud creditors" —those existing, as well as those that were supposed would arise from the subsequent actions of the parties. Such purpose is prohibited by articles 3966, 3967, Revised Statutes. The fact that the obvious purpose was to place this property beyond the reach of existing creditors, and hinder and delay the collection of their debts, constitutes the vice in the transfer. Seeligson & Co. v. Brown & Brown, 61 Tex. 180; Searcy v. Gwaltney Bros., 36 Tex. Civ. App. 158, 81 S. W. 576. In such case neither himself nor heirs can recover the property. As said in Farrell v. Duffy, 5 Tex. Civ. App. 435, 27 S. W. 20:

"It is the policy of the law * * * to discourage such transactions, instead of encouraging by enforcing them."

As the stream is muddied in its source, so it runs on to the end. It has been said, where the husband gave his wife title to personal property in fraud of his creditors, he could not recover it from her. Jordan v. Marcantell, 147 S. W. 357; Newman v. Newman, 86 S. W. p. 636. The taint of fraud is the same whether it be found in a personal property transaction, or is found in a deal wholly affecting real estate. The statute does not make conveyances of the kind fraudulent, where there are no creditors at the time. Searcy v. Gualtney Bros., supra. To be fraud, it must be that there are existing creditors, whose rights are affected by postponing, hindering, or delaying them in the collection of their debt. In such cases, where there were no rights of creditors involved, it seems a reconveyance may be enforced. Rivera v. White, 94 Tex. 538, 63 S. W. 125. But that, as between parties where the fraudulent intent was not to defeat existing creditors such deeds are held to be valid to pass title between the parties. Id.

In this case the court found that the deed was not delivered to take effect as an absolute conveyance. The husband, however, recorded it immediately, which of itself, without other controlling purposes constitutes delivery. True he kept it in his possession, but such holding seems to have been known and acquiesced in by his wife. He paid taxes on it. He rendered it in person for taxes in her name, and in some instances it was rendered by her, but the testimony shows it was only intended as a conveyance to defeat their creditors. And in addition to which the proof further showed she acknowledged it was held as community property between them.

The facts show that there were existing debts at the very time of the execution of the conveyance and in addition the evidence further shows that he feared his partner would further involve him, this being an additional cause for the conveyance, but that cannot relieve it of the fraudulent intent at the time in respect to hindering and delaying his creditors in the collection of existing debts though all were later paid off by him. In all the cases cited by appellee, besides many others not cited, the deeds shown to have been executed were executed by an insolvent person at a time when there were no existing debts. In other words there was no one to be defrauded, and no threatened claim having legal existence postponed or hindered and delayed in the collection thereof. Newman v. Newman, supra.

[10] It does not appear from the testimony that Mrs. Wells was at all cognizant of the fraudulent purpose and intent of her husband prior to the execution and delivery of the deed. If that be true, his conveyance passed the legal title to her, whatever his purpose and whatever statement or attempted subsequent oral agreement to constitute her the fraudulent vendee for such alleged trust purposes.

Appellee Wells does not present himself before a court of equity in such light as to cause his solemn conveyance made in fraud of his creditors, to be set aside now, to enable him to receive benefits thereunder. To do so would be to nullify one of the favorite maxims of the courts of equity that requires litigants to come into court with clean hands, showing themselves fit subjects for courts of chancery to administer relief.

[11] The facts are that the title was vested in Emma Wells by her said husband's deed, a complete separate estate for her own sole benefit and separate use; that at her death the only surviving heir was her sister, the appellant who inherited an undivided one-half interest in such estate. Article 2462, R. S.

Under article 3425 appellant would be en-

titled to have the homestead partitioned because there is no surviving widow nor minor children to use and occupy it. But under article 3429, R. S., it cannot be partitioned so long as the appellee Lee K. Wells lives, or so long as he may elect to use or occupy the same as a homestead. Hence the only relief that can now be given is to fix and determine appellant's interest in the land sued for which is the homestead of Lee K. Wells, appellee, which was unsold at the death of his wife, to wit, lots 20 and 21 in block 2, new city block 1661.

The judgment of the trial court therefore is reversed and here rendered in favor of appellant in so far as it denied to appellant a recovery of the lands sued for described as the homestead and unsold during the lifetime of the said Emma Wells, deceased, and to adjudge and decree to appellant that she do have and recover the title and interest to an undivided one-half interest therein. The judgment of the trial court is affirmed in favor of appellees F. H. Mayfield and Ella Mayfield.

Reversed and rendered in part, and affirmed in part.

## On Motion for Rehearing.

Appellee files a motion for a rehearing as well as does the appellant. The latter prays a modification of the judgment wherein the judgment of the trial court in favor of appellees T. H. and Ella Mayfield was affirmed, and asking for a judgment for one-half of the proceeds of the promissory note given to Emma Wells and Lee K. Wells for $1,400 and rents.

The appellee Lee K. Wells strenuously insists we are in error in holding there was no antecedent bona fide agreement between Lee K. Wells, appellee, and his deceased wife that she was to receive the conveyance and hold in trust until he could arrange with his existing creditors, and thereafter she was to convey the property, upon request, to him. While we said there was nothing to show his wife knew he was going to see a lawyer for the purpose of executing such a deed he did go to see one, but he did not tell her of his purpose beforehand nor at the time did she have any agreement with him. He testified:

"When we made the deed, she was with me when it was made."

He also testified:

"I told Mr. Altgelt at the time why I was doing it. * * * I went to Mr. Altgelt to draw up the deed to my wife. I didn't tell him how to make it. I didn't tell him nothing, except I told him to make me out a deed. As to what I told Mr. Altgelt when I went into his office, I told him I wanted to transfer the property to my wife, and I told him why I was doing it."

Most of the testimony introduced by the witnesses and set forth in the motion for a rehearing is in respect to statements as to the status of the property subsequent to the conveyance.

As stated in the original opinion, Emma Wells repeatedly stated she regarded it as community property, and no doubt would have conveyed it to Lee K. Wells upon his request at any time, but he did not request her to do so. She knew the object, purposes, and illegal intent permeating the conveyance. Courts of equity are not going to pursue the subject of such conveyances beyond their present purpose after it has been shown there were creditors whose claims were postponed and delayed whatever the subsequent outcome, if the deed thus illegally executed purposed to hinder and delay the collection of claims, or was intended to defeat or postpone such claims. According to appellee Wells, his wife was quite well informed as to his intent and purposes which she may have well understood, and knew it did not prevent the title, as stated in our opinion, from taking full effect in her.

We have carefully examined appellee's motion for rehearing and, finding no merit in it or anything new not already considered, the motion is overruled. And, finding no merit in appellant's motion for a modification of the judgment so as to reverse that part in favor of the Mayfields or to modify and render, so that appellant recover one-half of the proceeds of the sale of the property to the Mayfields and for rents and revenues, it is likewise overruled.