## RABB v. RABB.

### No. 8532.

Court of Civil Appeals of Texas. Austin.

July 14, 1937.

Everett L. Looney and Polk Shelton & Emmett Shelton, all of Austin, for appellant.

Warren W. Moore, D. H. Doom, and Williams & Williams, all of Austin, for appellee.

BAUGH, Justice.

Suit was by appellant as plaintiff below, against his sister, appellee and defendant below, in trespass to try title to 20 acres. of land in Travis county. Trial was to a jury, but at the close of the evidence the trial court instructed a verdict for the defendant and rendered judgment accordingly, from which this appeal is prosecuted. The only issue presented on this appeal is whether there was sufficient evidence to go to the jury on question of whether the deed of G. T. Rabb, father of the parties to this suit, dated June 24,

1903, to his wife, Isabella Rabb, mother of said parties, was delivered to said grantee; and whether G. T. Rabb executed said deed for the purpose of conveying said land to his wife.

■ The deed in question, while executed in 1903, was not recorded until June 1, 1931. G. T. Rabb died testate in February, 1929. In his will, filed for probate on May 29, 1931, he left his property to his four children, including the parties to this suit, share and share alike. If he did not own the land here in controversy, it is admitted that he had nothing to devise. Isabella Rabb was living at that time, but died in 1934, leaving a will in which she devised the land here in controversy to her daughter Mayme. If the plaintiff (appellant) had prevailed in this suit, he would, under his father's will, have been entitled to one-fourth of said land; and, though he brought suit as executor, he was, of course, personally interested in the result of the suit.

■ The execution of said deed in 1903 by G. T. Rabb is not controverted. The notary who took the acknowledgment, D. H. Doom, testified that G. T. Rabb came to his and his father's office at the time and instructed them to draw such deed conveying said property to his wife, for the stated purpose of vesting title to the property in her; that, because he (G. T. Rabb) was going away and might not be accessible, he wanted his wife to have full power to sell or dispose of the land as she saw fit; and, when advised by his attorney that she could not do so unless he joined her in the deed, he also at the same time had his attorney draw, and he executed, a power of attorney to his wife authorizing her to sign his name, act for him, convey the land, sign releases, checks, etc. The deed was absolute and conveyed fee-simple title to Mrs. Rabb, without restrictions or reservations, and there is no question but that it was drawn by the attorney just as directed by G. T. Rabb, and duly signed and acknowledged by him. On the issue of its delivery to Mrs. Rabb, Tom Rabb, another son, who was not a party to this suit, testified that he was present, along with all of the children, when his father delivered both the deed and the power of attorney to his mother in their home in June, 1903. None of the other children testified except the appellant, who testified that only the power of attorney was delivered by his father to his mother

on that occasion. His testimony, however, he being a party to the suit, interested in its result, and not called by the adverse party, was clearly inadmissible under the provisions of article 3716, R.S.1925. As stated by us in International Travelers'. Ass'n v. Bettis (Tex.Civ.App.) 3 S.W.(2d) 478, 480, "It is sufficient to disqualify the witness if he be interested in an action by which the estate of the decedent from whom he inherits may be increased as the result of his testimony." This is directly applicable here. See, also, Holland v. Nimitz, 111 Tex. 419, 424, 232 S.W. 298, 299, 239 S.W. 185. D. C. Rabb's testimony as to that transaction cannot therefore be considered. Without it, the testimony of Tom Rabb, of which no complaint is made, and who asserted no interest in this suit, stands uncontradicted that actual delivery of the deed to his mother was made in June, 1903. In addition to this, G. T. Rabb, the grantor, himself rendered this property for taxes as the property of his wife in 1904 and 1905. Judge Ike D. White testified that Mrs. Rabb had both the deed and the power of attorney in her possession and brought them to his office in 1915, and that he then advised her to have the deed recorded. She also had the deed in her possession when she died in 1934. There is no competent evidence that G. T. Rabb ever had the deed in his possession, though he and his wife lived together until his death in 1929, or that he ever took any steps to cancel, annul, or set it aside.

■ Manifestly these facts constituted clear proof of delivery and vesting of title to said property in Mrs. Rabb in June, 1903. This is true independent of the contention of appellee, which is undoubtedly the law, that where a husband executed a deed to his property to his wife for the purpose and with the intention of vesting title thereto in her, prior to the Separate Property Law of 1913 (Acts 1913, c. 32), title to such property passes to and vests in her, even though he retains possession of the deed himself—absent, of course, any purpose to defraud creditors, or the rights of innocent purchasers. This rule was predicated upon the husband's rights to the possession, control, and management of the separate property of his wife under the law as it existed in 1903, and the holding that his possession of such title papers was not inconsistent with her rights to the property. Brown v. Brown, 61 Tex. 56; Newman v. Newman (Tex.Civ.App.) 86

S.W. 635; Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661, 5 A.L.R. 1660; Jamison v. Wells (Tex.Civ.App.) 236 S.W. 806; 14 Tex.Jur., § 67, p. 830.

And where, as here, a duly executed deed is found in the possession of the grantee, delivery thereof to the grantee will be presumed; and the burden rests upon those disputing such delivery to prove the contrary. Gonzales v. Adoue, 94 Tex. 120, 58 S.W. 951; 14 Tex.Jur. § 68, p. 831, and cases cited.

And where a grantor, in the absence of any fraud, accident, or mistake, none of which is here asserted, has had prepared and has executed an absolute conveyance of property to his wife, it will be presumed that he knew the full import of such instrument; and where it has become effective he will not thereafter be permitted to disparage or deny the title so conveyed. When and after such a conveyance becomes effective, any subsequent change of intention on his part, or subsequent claim of the property as his own, becomes immaterial and inadmissible. Henry v. Phillips, supra; 10 Texas Jur. § 72, p. 837.

In view of the uncontroverted facts as above outlined, and the rules of law above announced, we think the evidence which appellant insists was sufficient to go to the jury on the issue of the delivery of the deed and the intention of G. T. Rabb in the premises becomes immaterial. This evidence, omitting that rendered inadmissible by article 3716, R.S., was in brief, as follows: Testimony of the appellant of a conversation he had with his mother between 1923 and 1925, in which his mother asked him to see if he could not get his father to give her a deed to the old homestead (the property here involved); rendition of the property for taxes subsequent to the year 1905 in the name of G. T. Rabb, some years by himself and some by one of his sons; testimony of a witness who was a neighbor of the Rabbs from 1916 to 1929, that G. T. Rabb had told him in 1916 and subsequent thereto that the old home place was his property; testimony of another witness that G. T. Rabb had told him in 1905 that he had been gone for some time; that "I go and stay awhile, then I come awhile"; testimony of Tom Rabb that the children had a conference in Henry Faulk's office after the death of their father concerning the division of the home place; the fact that the deed was not placed of record until after their father's will was filed for probate; testimony of Gilbert Rabb, a son of appellant, that he heard a conversation between his grandparents in 1922, in their home, in which his grandfather, G. T. Rabb, said, "Bell, that deed of mine is missing. I told you for years that you can't have it. You have asked me a number of times for it. It is gone out of my box. You can't have it. I have told you before you can't have it." And again that G. T. Rabb said to appellant on one occasion, "They are worrying me about the deed again at home. They have been trying to get that deed from me since around 1900. They are never going to get it." Also the testimony of Henry Faulk that he had advised Mayme Rabb shortly after he had written it that her father had made a will, and that she did not tell him then that her father had no property; and that when he discussed with her and D. C. Rabb, after their father's death, a division of his property, the appellee, Mayme Rabb, did not mention any conveyance of said property to her mother.

The foregoing testimony relates almost entirely to facts, statements, or circumstances transpiring long after the date said deed was executed. The uncontroverted facts as to what transpired in June, 1903, we think as a matter of law showed a delivery of the deed by the grantor to the grantee with intent to pass title to her. That being true, under the rules now settled, what transpired thereafter, who claimed the property, in whose possession the deed may have rested from time to time, or whether G. T. Rabb may thereafter have changed his mind, are all in our opinion immaterial. The purpose and intention of G. T. Rabb were, we think, clearly disclosed in what the uncontroverted evidence of disinterested witnesses showed that he did in June, 1903. That is, that he conveyed said property to his wife; and, having so vested title in her, what he is asserted to have thereafter stated does not change the effect of his conveyance. We conclude, therefore, that the trial court properly instructed a verdict for appellee, and the judgment will accordingly be affirmed.

Affirmed.