HAMILTON-BROWN SHOE COMPANY ET AL. v. CYRUS WHITAKER ET AL.

No. 281.

**1. Probate Records.**—Copy of will and its probate certified by the clerk of the court in which the order of probate was made, where relevant, is competent when it fairly appears from the certificate of the officer that the paper offered in evidence is a copy from the records required by law to be kept for preserving the proceedings of the Probate Court, whether the certificate designates the books from which the copy was taken as *minutes* or *record book*.

**2. Probate and Record of Will — Correction of Mistake.** — The County Court as court of probate has power to correct a mistake made by the clerk in recording a will.    It seems that the correction may be made at any time thereafter.    The corrected record will take effect from the original action. See example of correction seven years after the entry of the record in which was the mistake.

**3. Interest on Money Loaned by Wife to Husband.**—If upon the husband's borrowing money, his wife's separate property, he promises to pay interest, such interest will be her separate property.

4. **Evidence of Wife's Separate Property.**—Parol evidence is competent to prove how money received from the sale of land owned by the wife was invested; tracing it to the fund in controversy.

5. **Creditors Dealing with Insolvent Debtor—Fraud.**—A bona fide creditor may obtain property from his insolvent debtor for the purpose of satisfying the debt, if he receives no more than sufficient for that purpose, although the debtor may intend to defraud his other creditors, and such fact be known to the creditor taking such property.

6. **Same—Guardian and Ward.**—Cabell v. Hamilton-Brown Shoe Company, 81 Texas, 104, adhered to. A guardian having spent his ward's money, can not discharge his liability by transferring property to his ward without authority of the Probate Court.

7. **Conveyance Good as to Some Parties.**—An insolvent debtor conveyed goods to a number of his creditors to be held by them severally, each in proportion of his debt to the amount of all the debts. The goods were less in value than the amount of indebtedness satisfied. *Held*, that the failure of the conveyance as to one or more of the grantees will not affect the rights of the other creditors against whom no complaint is made.

APPEAL from McLennan.  Tried below before Hon. W. M. FLOURNOY, Special District Judge.

*B. H. Rice* and *Herring & Kelley*, for appellants.—1. The objection that the probate of the will was not recorded in the probate minutes is of no significance. The minute book is a record of the court. If the clerk (as is customary in Texas) has one book in which he enters orders of the court, and another in which he enters file papers which are required to be recorded, and calls one book the "probate minutes," and the other the "probate records," this will not rob the "probate records" of their vitality as "minutes." They are all record books. Rev. Stats., title 37, ch. 2.

2. The County Court of Robertson County was a court of competent jurisdiction regarding the probate of wills of deceased persons, and had full power to correct errors and omissions by its clerk in recording papers on file in said court; and said court, in the matter of ordering said will to be recorded, having acted within the scope of jurisdiction, its decree can not be attacked in this collateral action. Whitman v. Haywood, 77 Texas, 557; Wilkerson v. Schoonmaker, 77 Texas, 615.

3. The title to the land was not involved in this controversy; and for the purpose of showing that the proceeds of the land was the separate estate of Mrs. La Prelle, it was competent to prove by her brother that he knew the land, and that it was the same land which she received from her father's estate, and that witness bought and paid her for it, she having been in possession of it as a gift at the time and having received rents from it as her separate estate for three years. Railway v. Durrett, 57 Texas, 48.

4. No fraud sufficient to set aside the sale can be evolved from the facts that the claims were just and that the property appropriated to their satisfaction was not more than enough to pay them in full. Allen v. Carpenter, 66 Texas, 139; Ellis v. Valentine, 65 Texas, 548; Edwards v. Dickson, 66 Texas, 614.

5. That the law makes allowance for honest mistakes: La Belle v. Tidball, 69 Texas, 166; Harness Co. v. Schoelkoff, 71 Texas, 422.

That the small excess will not avoid the transaction, where the claim is just, and overstated unintentionally: 76 Texas, 286; Davis v. Beason, 77 Texas, 607.

That the interest due on the note was Mrs. La Prelle's separate property: Hall v. Hall, 52 Texas, 294; McCormick v. McNeil, 53 Texas, 21.

That her right to the interest accrued prior to the claims of attaching creditors, and is superior thereto: Martin Brown Co. v. Perrill, 77 Texas, 204.

6. John La Prelle, as guardian, had authority to compromise bad debts, and take property in settlement: Rev. Stats., art. 2547; Eckford v. De Kay, 8 Paige Ch., 89.

He had power to act as testamentary guardian, independently of any court: Rev. Stats., art. 2522.

In taking property in settlement of a claim against an insolvent debtor, he acted as a prudent man would concerning his own affairs: Rev. Stats., arts. 2544–2546.

The guardian had the right and power to hold possession of property in common with other joint owners: Rev. Stats., art. 2550.

It was his duty to take possession of the property which he transferred to his ward: Rev. Stats., arts. 2542, 2545.

His possession of the property under the bill of sale was equivalent to actual delivery to his ward: Brown v. Brown, 61 Texas, 65 (by analogy).

The guardian is the agent of his ward, and the possession of the guardian is the possession of his ward: Sallee v. Arnold, 28 Am. Dec., 146, 147.

Reagan Dickson being under disability, and having a guardian to act for him, he was deprived of all power to act for himself, even had he been present at the time the bill of sale was made. Tied. on Sales, sec. 26.

*J. A. Martin, D. H. Hardy, Goodrich & Clarkson*, and *S. L. Samuels*, for appellees.—1. The court did not err in rejecting the pretended probate of James Talbot's will, for the following reasons stated in the bill of exceptions:

(1) The paper or certified copy of the record offered as the will does not appear to be the record of the will admitted to probate; and said order is detached therefrom and made seven years before the record of said will offered in evidence. Rev. Stats., arts. 1802, 1855.

(2) The purported probate of the will does not appear to be a tran-

script from the book of the probate minutes of the Probate Court of Robertson County.　Rev. Stats., art. 1795.

(3) The purported probate of the will offered does not appear to be a transcript of the record of the judgment of the Probate Court of Robertson County establishing and recording the will of James Talbot.　Rev. Stats., arts. 1854, 1855.

(4) It appearing from the offered probate that it is the transcript of an ex parte order of the Probate Court of Robertson County in 1889, more than seven years after the original judgment of said court probating said will, the court did not appear to have jurisdiction of the subject matter; and no parties were cited to appear and contest the correction and change of judgment of said Probate Court of 1882, and it is no transcript of a judgment of said court.　Rev. Stats., arts. 3213, 3207; Phelan v. Wiley, 2 Willson's C. C., sec. 735; Lewis v. Ames, 44 Texas, 335.

2. The property of Mrs. La Prelle, for which the note was given, was presumptively community property, unless the contrary was "satisfactorily" proved; and the will was the only "satisfactory" proof, and in its absence no other proof could be considered on the question of separate property.　Rev. Stats., art. 2953; Low v. Tandy, 70 Texas, 746.

3. The evidence failing to show title in Reagan Dickson or in Mrs. Rosa La Prelle, who were joined as coplaintiffs and as owners in common with the other plaintiffs, there was a variance in this respect between the allegations and proof, and none of the plaintiffs could recover in this action.

As to the necessity of the assent of Reagan Dickson, so as to pass title to him: Wallis v. Taylor, 67 Texas, 431.

As to the necessity of the sanction of the Probate Court, so as to pass title to Reagan Dickson: Camoron v. Thurmond, 56 Texas, 22; Wygal v. Myers, 76 Texas, 603; Rev. Stats., arts. 2332, 2559.

Reagan's ratification after the attachment was a nullity: Wallis v. Taylor, 67 Texas, 434; Kittrell v. Blum, 77 Texas, 338.

The guardian can not deal with himself: Rev. Stats., art. 2582; Dew v. Hamel, 18 N. J. Law, 81; Freem. on Void Jud. Sales, sec. 33; Bish. on Con., 2 ed., sec. 29; Taussig v. Hart, 58 N. Y., 425; 14 N. Y., 91, 92; Wilcox v. Smith, 26 Barb., 340.

If any of the alleged tenants in common of the goods failed in the proof as to their title, none of the other coplaintiffs could recover in this action, although their title might be fully proved, there being a fatal variance between the allegation and proof.　Longcope v. Bruce, 44 Texas, 434; May v. Slade, 24 Texas, 208; Middlebrook v. Zapp, 73 Texas, 29; Gerry v. Gerry, 11 Gray, 381; Hawes on Part. to Act., sec. 102.

FISHER, Chief Justice.—The appellants, the Hamilton-Brown Shoe Company, James L. La Prelle, Mrs. Mary J. Talbot, Rosa F. La Prelle, joined by her husband, John La Prelle, and Reagan Dickson, a minor,

by his guardian, John La Prelle, sued Cyrus Whitaker, as sheriff of Falls County, and the sureties on his official bond, and the sureties upon an indemnity bond, and Meyberg & Rothchild Bros., attaching creditors. The plaintiffs' action was for damages, the alleged value of certain goods and merchandise that were taken from their possession by the defendants under a writ of attachment in the suit of Meyberg & Rothchild Bros. against John La Prelle.

The appellants claim to own the property so levied upon by the appellees, by virtue of a bill of sale executed by John La Prelle on the 15th day of October, 1887, before the levy of the writ of attachment, wherein was conveyed to them this property in payment and satisfaction of debts owing by John La Prelle to each of said plaintiffs in severalty. Said bill of sale reciting the debt due by him to each of said parties, and that the vendees are "to have and to hold the property above described unto the several creditors aforesaid" (the appellants) "in the proportion that their respective demands bear to the aggregate amount of all of said several debts above specified."

The amended petition, upon which the cause was tried, alleged, that since the institution of the suit Mary Talbot, one of the original plaintiffs, has died, and that Rosa La Prelle is her only surviving child, and is entitled to her interest in said property as her only heir. The petition generally alleges, that the appellants and Mary J. Talbot were joint owners of the property at the time of the levy of the writ of attachment. And the petition further specifically alleges, "that said goods, wares, and merchandise, the value of which is now here sued for, was held and owned by plaintiffs and said Talbot in the proportion that their said several demands respectively bore to the aggregate amount of all of said debts, and that they are entitled to recover the value of said goods in like proportion," here alleging the proportion that each plaintiff is entitled to. During the progress of the suit, Reagan Dickson became of age and appeared in his own behalf, and by pleadings adopted all acts done by his guardian in his behalf in the making of said bill of sale and in bringing suit to enforce his rights thereunder.

The appellees, by answer, justified the taking of the property under an attachment against John La Prelle; that the conveyance of said property by John La Prelle to plaintiffs was made to defraud his creditors, he being insolvent and they participating in the fraud; that the claims in settlement of which it was made were fictitious and fraudulent; that if otherwise, the satisfaction of the debts named in the bill of sale was colorable and pretended, and used simply as a mythical consideration for said sale, and that the real intention of the parties was that the debts should not be paid off, but continue to exist, and that under cover of the bill of sale John La Prelle should retain possession of the goods and dispose of them for his own benefit; that the bill of sale and condition of payment of

the debts expressed therein was not assented to by Reagan Dickson, or by any one authorized to act for him. That long before the debt to Meyberg & Rothchild Bros. was incurred, John La Prelle was indebted to James La Prelle and Hamilton-Brown Shoe Company, and was insolvent, and his insolvency known to them, and they all entered into a conspiracy to represent John La Prelle as solvent and having ample means and worthy of credit in general, so that he could buy goods on credit and obtain goods sufficient to pay plaintiffs, and when he obtained such goods he should turn the same over to them in pretended payment; and in pursuance of such conspiracy they made representations as above stated to Bradstreet's Commercial Agency, etc., whereby John La Prelle obtained credit and got the goods in question, and then transferred them to plaintiffs. They further pleaded, that Reagan Dickson never assented to any agreement by virtue of which he could become owner of the goods in controversy, and that he owns no interest in said goods.

The cause was tried below before the court without a jury, and judgment was rendered in favor of the appellees.

The court below found the following as its conclusions of fact and law:

"In 1887 John La Prelle was merchandising in Marlin, Falls County, and on October 15 of that year, upon examination of his affairs with his brother, James La Prelle, concluded that he would be unable to meet his liabilities, as he was indebted in a large amount to various parties. He executed a bill of sale on that day to plaintiffs, to-wit, Hamilton-Brown Shoe Company, James La Prelle, Mrs. Mary J. Talbot, Mrs. Rosa F. La Prelle, and Reagan Dickson, to his entire stock of merchandise, and certain other property mentioned in said bill of sale, to pay certain debts that he claimed to have owed them; the value of the property transferred falling $1900 short, however, of the full amount of the indebtedness he proposed to liquidate by the transfer. John La Prelle was indebted to other parties in various sums, aggregating a large amount. James La Prelle is the brother of John La Prelle, and stockholder and employe of Hamilton-Brown Shoe Company. Mrs. Mary J. Talbot was the mother-in-law and Mrs. Rosa F. La Prelle is the wife of John La Prelle, and Reagan Dickson is his brother, and was his ward at the date of bill of sale. Hamilton-Brown Shoe Company is a corporation, located in St. Louis, Missouri, and doing business in Texas, James La Prelle being its representative in Texas. The parties to whom the bill of sale was made went immediately into possession of the goods, John La Prelle acting for his wife, Mrs. Rosa F. La Prelle, and his ward, Reagan Dickson. On the —— day of ————, 1887, an attachment was levied on part of the goods by the defendant Cyrus Whitaker, sheriff of Falls County, in favor of Meyberg & Rothchild Bros. to secure a claim of $342.50 against John La Prelle. This was a just claim against John La Prelle.

"The proof showed the claims of Hamilton-Brown Shoe Company,. James La Prelle, and Mrs. Mary J. Talbot to be valid and owed by John. La Prelle at date of bill of sale.

"The indebtedness claimed to be due Mrs. Rosa F. La Prelle was evidenced by a note executed in her favor by her husband, John La Prelle; this note being $2500 principal, and interest thereon amounting to something over $600, or enough to make the amount of note. The principal was shown to be funds derived from the sale of 200 acres of land lying· in Robertson County. This land was claimed to have been inherited from her father, James Talbot, by will of said James Talbot. The will was not admitted in evidence.

"As to claim of Reagan Dickson, the proof shows that John La Prelle was appointed by the Probate Court of Grimes County his guardian, and that he had used his funds in his business, but had made no return to the Probate Court since his appointment. It was shown that the parties to whom the bill of sale was executed were required to give full receipt for their entire claims, and that the guardian attempted to pay off his ward in same way, and the property transferred, according to estimate in bill of · sale, was not sufficient to pay full amount of said claims. There was no proof that any Probate Court had passed upon and approved the acts of said guardian. It was proven that John La Prelle reserved in his hands $2500 in notes and accounts, not included in the bill of sale.

"From the evidence, John La Prelle seems to have believed that he owed his wife the amount of money included in his wife's note, except the interest included in said note on the principal debt of $2500. The· evidence shows the goods levied on in this case to be worth about 55 cents on the dollar.

"From the facts the court concludes, that the note representing the claim of Mrs. Rosa F. La Prelle was the community property of herself and husband, John La Prelle, and hence in attempting to settle same by transfer it accrued to his benefit, and was fraudulent and conveyed no· title to Mrs. La Prelle; and as to the claim purporting to be due Reagan Dickson, it was wholly unwarranted in law or morals, and fraudulent.

"The conclusion of the court on the facts is, that John La Prelle and James La Prelle (for himself and as the representative of Hamilton-Brown Shoe Company—John La Prelle presuming to act for his wife and Reagan Dickson) conferred together and agreed to execute said bill of sale, with a fraudulent intent as to other creditors of John La Prelle. Taking this view, the court ordered judgment for the defendants."

The first assignment of error insists that the court erred in not admitting in evidence the certified copy of the record probating the will of James Talbot, deceased.

Mrs. Rosa F. La Prelle, one of the plaintiffs, the wife of John La Prelle, claimed an interest in the property conveyed by the bill of sale

executed to the plaintiffs by John La Prelle, by reason of the fact that she was a bona fide creditor of her husband; that he owed her for borrowed money loaned to him out of her separate estate; that said moneys so loaned arose from the sale of land that was devised to her by the will of her father, James Talbot, deceased.   The evidence showed that she, after her marriage, sold 200 acres of land, and the proceeds of the sale, $2500, were loaned to her husband, John La Prelle.   The will of Talbot was offered for the purpose of showing that this 200 acres tract was devised to her by the terms of the will.   The evidence shows that the consideration for the conveyance to Mrs. La Prelle was the debt that John La Prelle owed her for the money that he had used, arising from the sale of the land.

We think that the record of the probate of the will was admissible in evidence, and that the court erred in excluding it.   It fairly appears from the certificate of the officer that the paper offered in evidence is a copy of the records required by law to be kept for preserving the proceedings of the Probate Court.   There is no merit in the objection, that it does not appear from the certificate that the paper is a copy of the record or minutes of the court.   The second objection, and the only one that we deem important to notice, is, that the record offered in evidence appears to be a copy of the judgment of the Probate Court of Robertson County, made in 1889, correcting the record of the former judgment made in 1882, probating the will of James Talbot; the contention being, that the court had no power or jurisdiction in 1889 to correct or amend the record probating the will in 1882.

It appears from an inspection of the certified copy of the probate records offered in evidence, as shown by the bill of exceptions, that the will of James Talbot was probated in 1882, but that in making and entering the record thereof, a mistake was made in the record, and that the will was incorrectly recorded.   In 1889 the same court, by an order, corrected this mistake, and ordered that the record be so amended as to make it show the true facts, and that the will be properly recorded.

The statute requires the will, together with the probation thereof, to be recorded.   This record, when so made, becomes the judgment of the court.   Articles 1354 and 1355, Sayles' Civil Statutes, empower the court to correct any mistake or misrecital in its judgments; and when its judgment correcting such mistake is collaterally questioned, as is done in this case, we must conclusively presume that the court followed the procedure prescribed by the two articles referred to, and that such judgment is legal.   It does not appear upon the face of the record that the court, in correcting its record, did not pursue the law that authorizes the correction to be made.   Because the judgment correcting the mistake is made after a long lapse of time from the entry of the original judgment, is no reason why the correcting judgment is void, and is not a reason

for denying the court jurisdiction to correct its records. It is held, that the remedy provided by these statutes is not governed by any period of limitation fixed by law. Ramsey v. McCauley, 9 Texas, 106.

It will be seen from the findings of the court that it held that the debt due by John La Prelle to his wife was community property, and that he owed her nothing. This is sufficient to show the importance of the will as evidence, for if it had been introduced in evidence, it would have shown her separate interest in the funds loaned her husband.

In this connection, it is well for us to say, that if upon another trial it appears from the evidence that the interest due by La Prelle on the amount borrowed from his wife was agreed to be paid her for the use of the funds of her separate estate, such interest becomes her separate property. Hall v. Hall, 52 Texas, 294; Martin Brown Co. v. Perrill, 77 Texas, 204.

Holding that the record probating the will of James Talbot was admissible, it becomes unimportant to consider appellants' second assignment of error, concerning the exclusion of the evidence of Romanus Talbot. But we think this evidence, as well as that of any other witness who is able, by a knowledge of facts, to trace the ownership of the funds used by John La Prelle to the separate estate of his wife, is admissible. It is not a controversy in which the title to the land devised to Mrs. La Prelle by the will is involved. But the fact in issue is simply tracing back the source from which the funds arose. Witnesses may know that this fund arose from the sale of property that belonged to the wife in her separate right, and that fact may be proven either by the will or by the evidence of witnesses who are acquainted with the facts. It is not a question wherein a title to the land is involved, for the wife may not have a good title; but if land came to her in such a way as to be her separate property under the law, and it should be sold, the proceeds of the sale, as between her and her husband, would be her separate property, notwithstanding her title may be inferior to that of some one with a better title.

The appellants' fourth assignment complains that the court below erred in not rendering judgment in favor of Mrs. Rosa F. La Prelle for an amount equal to the interest of her deceased mother, Mrs. Mary J. Talbot, which she inherited after the filing of this suit. Mrs. Mary J. Talbot is one of the vendees named in the bill of sale executed by John La Prelle to the appellants, and it appears from the evidence that she died since the commencement of this suit, and that Mrs. Rosa F. La Prelle is her only heir.

The court below, it will be observed, found that Mrs. Mary Talbot was a creditor of John La Prelle at the time that the bill of sale was executed, and that her demand, and also that of the Hamilton-Brown Shoe Company and James La Prelle, were valid claims and debts owing by John

La Prelle. In the final conclusion reached by the court, that the sale, as to the interests of James La Prelle, the Hamilton-Brown Shoe Company, Mrs. Rosa La Prelle, and Reagan Dickson, was fraudulent as to the creditors of John La Prelle, on account of the combination and conspiracy between James La Prelle and John La Prelle to defraud the creditors of John La Prelle, there is no finding or disposition made of the interest of Mrs. Talbot that descended to Mrs. Rosa La Prelle.

Mrs. Rosa La Prelle would receive the interest of her deceased mother, Mrs. Talbot, in the same condition it existed when descent was cast; and if Mrs. Talbot's title was free of any fraud as to the creditors of John La Prelle, Mrs. Rosa La Prelle would receive it in the same condition. The effect of the findings of the court would seem to negative the existence of any fraud upon the part of Mrs. Talbot in acquiring her interest or title in the property. And looking to the evidence upon this issue, it does not establish the fact that she participated in any scheme to defraud the creditors of John La Prelle. We do not wish to be understood that we entertain the opinion that the finding of the court on the issue of fraud was correct, or that it was supported by the evidence as to the interest of the other plaintiffs. That is a matter we leave to be determined upon another trial.

But, however, in this connection, we wish to say, that if it be true that John La Prelle was honestly owing the Hamilton-Brown Shoe Company and James La Prelle and Mrs. Mary J. Talbot and his wife, Mrs. Rosa F. La Prelle, the debts recited in the bill of sale executed by him, and that the property transferred was not of greater value than sufficient to satisfy the said debts, and that the purpose of said parties in purchasing said property was to collect their debts, although John La Prelle was insolvent, and although his purpose may have been to defraud his creditors, and such purchasers may have known that such would be the result of the sale, and such facts were known to them, we do not understand that in such case the law would hold the sale fraudulent as to the other creditors. A creditor who has a bona fide claim against his debtor, and in good faith receives a transfer of his debtor's property for the purpose of satisfying his claim, and receives no more than sufficient for that purpose, will be protected, although his debtor may be insolvent, and may intend to defraud his other creditors, and such facts be known to the creditor at the time of his purchase. Owens v. Clark, 78 Texas, 547.

There was no error in the court's holding that the sale to Reagan Dickson was illegal, and that he acquired no title by virtue of the conveyance executed by John La Prelle. This has been expressly decided in the case of Cabell v. Hamilton-Brown Shoe Company, 81 Texas, 104.

Appellees contend that the judgment of the court should be maintained, for the reason that the plaintiffs jointly sue for the damages resulting

from the trespass, and that the recovery failing as to Reagan Dickson, one of the plaintiffs, it should fail as to all.

The petition, as before stated, set up in severalty the interest of each of the plaintiffs in the property conveyed by the bill of sale. The bill of sale was made to them as the several vendees, stating that each should hold the property in proportion to the respective claims of each of said vendees against John La Prelle. The instrument creating the title defines the interest of each in the property conveyed.

This identical question was determined by our Supreme Court in the case of Cabell v. Hamilton-Brown Shoe Company, 81 Texas, 104, where the rights of the parties under this bill of sale were in question. In that case the action of damages was by these appellants against Cabell, United States marshal, and the sureties upon his indemnity bond. All the plaintiffs recovered judgment in the court below, and upon appeal the judgment as to Reagan Dickson was reversed, and it was adjudged that his guardian, John La Prelle, take nothing by his action, and judgment was rendered in favor of the other plaintiffs in the case. Although it does not appear in the report of the case, an examination of the record shows that appellant Cabell, by his motion for rehearing, complained of the judgment of the Supreme Court, because "Reagan Dickson, one of the plaintiffs, failed to show any cause of action against the appellants or any interest in the property seized by appellants. The case stated in the petition of plaintiffs failed to correspond with the case made by the proof." This quotation embraces the entire ground urged in the motion for rehearing. The judgment of the Supreme Court was that the motion be overruled.

Thus it will be seen that this question was passed upon by the Supreme Court, and determined adversely to the contention of appellees.

We believe the correct rule upon this subject, where the conveyance is made to satisfy the claims of several grantees or creditors, and the consideration for the purchase emanates from each, as shown in this case, and the pleadings ask relief in proportion to their respective interests, is to hold the conveyance valid as to those grantees or creditors whose purchase was bona fide or supported by a valid consideration, although the title of other joint purchasers or vendees may fail on account of some vice in their pretended purchase. Bump. on Fraud. Con., 3 ed., 488; Burr. on Ass., 5 ed., sec. 117.

The inclination is strong in the court to reverse and render judgment in favor of the appellants, with the exception of Reagan Dickson, and especially as to the interests of Mrs. La Prelle inherited from her deceased mother, Mrs. Talbot; but owing to the fact that an issue of fraud is raised by the pleadings, we will reverse the judgment of the court below and remand the cause for another trial. The judgment below as to Reagan Dickson will stand affirmed. And it is further adjudged, that one-fourth

of the costs of this appeal and of the court below be adjudged against him, and that the remaining costs of this appeal be adjudged against the appellees.

*Reversed and remanded.*

Delivered October 11, 1893.

Motion for rehearing refused.