## WATSON v. TEXARKANA PIPE WORKS.
### (No. 2830.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 17, 1924.)

1. **Master and servant** &#9758;278(3)—**Negligence in furnishing wagon held not shown.**

Evidence in action for injury to employee in removing load of tiling *held* not to show actionable negligence in furnishing wagon defective so as to cause load to jam, proximately causing the injury.

2. **Evidence** &#9758;147—**Certificate by Industrial Accident Board of nonexisting fact not admissible.**

Vernon's Ann. Civ. St. Supp. 1918, art. 5246—50, providing for the Industrial Accident Board issuing a certified copy of an order, etc., on file in its office, does not authorize it to give a certificate that an employer is not a subscriber for, and has not provided for and registered with the board, insurance under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), and such nonexisting fact cannot be proved by such a certificate, but only by testimony or deposition of a witness.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by Mrs. Florence Watson, temporary administratrix, against the Texarkana Pipe Works. Judgment for defendant, and plaintiff appeals. Affirmed.

The action is by appellant for damages for alleged wrongful death of her husband. After hearing the evidence, the court peremptorily instructed the jury to return a verdict in favor of the defendant.

The alleged grounds of action are:

"The deceased and one other were engaged in hauling the defendant's pipe from one point to another in defendant's yard, and that, while so engaged the pipe became fastened or wedged in the wagon furnished by defendant, by reason of the wagon having become shackly and worn, That the standards on said wagon, used to hold the pipe on the wagon, had become worn and loose, and would spread out at the top so that pipe loaded on the wagon would slip down and become wedged and fastened on account of the shackliness and defectiveness of the wagon. That in trying to get a piece of pipe loose and to unload same he wrenched, strained, and sprained his back so that the spinal cord or nerves would not properly function, thereby rendering him helpless and afterwards causing his death on June 22, 1922. * * * That he died from said injury so received, and it was because of the negligence of this defendant in furnishing such an old, shackly, and worn wagon for the deceased to use."

The defendant answered by general denial.

The appellee is a partnership doing business under the trade-name of the Texarkana Pipe Works, engaged in manufacturing clay products known as vitrified pipe. The de-

ceased and L. L. Peek were assigned to the particular work of transferring pipe from one part of the appellee's yard to another part, using a wagon provided for the purpose of hauling it. Peek was the driver of the wagon, and both Peek and the deceased loaded and unloaded it. The wagon is described as "a low wheeled wagon about 9 feet long, about 12 inches off the ground." The bed of the wagon rested on five pieces of 2x4 plank fastened to two side pieces of 4x6 plank. On the sides were four upright iron standards about 3 feet high set in iron hoops and fastened to the bottom of the bed. The wagon had been used about two years.

The witness Jasper Watson testified as follows:

"About October 24, 1921, at about 9 o'clock in the morning, I saw my father working. I was over there to see my father. He and Peek were working, unloading some pipe. My father was pulling at the pipe, and he just dropped down and said, 'Oh, I sprained my back;' it was while he was unloading the pipe. He was behind the wagon when he got hurt—at the back end of it. When I first saw my father he was reaching down for the pipe, getting it out of the wagon. He looked as if he was pulling the pipe from the wagon. I was about 50 yards from him. He was lifting it from the wagon, and the pipe was in a tight place where it wouldn't slip. The pipe was made tight in there because the wagon had had a load on it; and it slipped down because the bed of the wagon had spread and it was choked down tight. The standard was out like, and was kind of weak and would spread out and make the pipes drop down. The standards on the wagon were loose, or worn kinder. They had gotten down to the last row of tiling, and so when Father was catching hold of it like, and as he was lifting on it, he fell down. Mr. Peek was standing upon the wagon when my father fell, and he got down."

The witness Peek testified as follows:

"I am team driver for the Texarkana Pipe Works. J. I. Watson was employed by the Texarkana Pipe Works, and had been in its employment for about two years on October 24, 1921. About 9 o'clock, October 24, 1921, Watson was standing on the ground laying pipe on the edge of the wagon, and I was stacking it in the wagon, when he said he had sprained his back, or something like that. I told him if it hurt his back to hand the pipe up to get on the wagon, and I. would hand them up. He did this, and I handed him a few pieces, and he said it hurt his back worse than handing them up. He walked off and I went to unload the pipe. When I came back he had gone. We had been working together since 7 o'clock that morning, loading and unloading 8-inch pipe. Watson was on the ground when he made the remark about his back hurting him, and I was on the wagon laying the pipe. We were loading the wagon. I was stacking the pipe in the wagon, and Watson was handing it to me. * * * I had been using the wagon for about two years in moving pipe, and the wagon was in good condition as far as I know. The standards were

a little loose, not very. The top pipe would spread them some, but not very much. The pipe would slip down a little, but not much, but would not become fastened at the bottom of the standard, and I never had any pipe to become fastened. * * * The standards are made of iron and are fastened to the side pieces with iron hoops."

There is evidence tending to show that the injury the appellant claims her husband received caused him much suffering, finally ending in his death the following June. The evidence on the part of the appellee goes to show that the deceased was suffering from tuberculosis and that this disease caused his death, and that he did not suffer any hurt in their employ.

Johnson & Waters, of New Boston, for appellant.

King, Mahaffey & Wheeler, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). [1] The pertinent question is, Does the evidence on the part of the plaintiff show actionable negligence of appellee proximately causing the alleged hurt to J. I. Watson? The negligent acts relied upon are, as alleged: "The standards on the wagon, used to hold the pipe on the wagon, had become worn and loose and would spread at the top so that the pipe loaded on the wagon would slip down and become wedged and fastened." It does not appear by evidence that the wagon was "shackly." In respect to the allegations, the evidence on the part of the plaintiff was to the extent that the standards on the sides of the wagon were "kind of weak and would spread out and make the pipes drop down. * * * Were loose or worn kinder." And as further shown by the plaintiff, "The standards were. a little loose, not very. The top pipe would spread them some, but not very much. The pipe would slip down a little, but not much, but they would not permit the pipes to become fastened at the bottom of the standards." It was while unloading the pipe "at the bottom of the standards" that J. I. Watson was, it is claimed, injured. According to the testimony of Jasper Watson, while his father was "pulling at" or "was lifting" a pipe from "the last row of tiling" on the bottom of the wagon "he just dropped down and said, 'Oh, I have sprained my back.'" It is shown that the pipe, 30 inches long and 8 inches wide, was loaded on the wagon in rows placed one above another. Inferably enough pipe and no more, were placed in each row of pipe to occupy the lateral space of the wagon. And it does not appear that the lateral space at or toward the bottom of the wagon was widened by reason of the standards being "loose or worn kinder" so as to allow a pipe of so large a size as 8 inches wide to settle and cause a jam in the bottom row. It does not appear that at the time more pipes were in the bot-

tom than customarily occupied the lateral space of the wagon. As testified by the witness, "the top pipes would spread them [the standards] some, but not much." And the inference could not reasonably be drawn that the lower rows of pipe would spread the bottom part of the standards because "the top pipes would spread them" at the top rows. For the witness affirmatively states that the top row of pipe "would slip down a little, but not much, but they would not permit the pipes to become fastened at the bottom of the standards." The fact that the deceased strained his back while "pulling at" or "lifting" a pipe would not, in the face of the evidence, authorize the further finding that the standards caused it. It is as inferable that the deceased might have wrenched his back by reason of a position he assumed at the time, or from some inherent weakness of the back. Therefore it is concluded that no actionable negligence according to the allegations is shown. It is the law that an employer does not insure the absolute safety of the employee in the work, such as unloading a simple vehicle as a wagon, and is liable only for damages for negligence.

[2] It was not error on the part of the court to refuse to permit the plaintiff to offer in evidence the purported certificate of the secretary of the industrial accident board "that the Texarkana Pipe Works were not subscribers for an insurance policy under the Workmen's Compensation Act for the state of Texas (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), nor had they provided for compensation insurance and registered the same with the Industrial Accident Board for the state of Texas:" The statute authorizes the issuance of "a certified copy of any order, award, decision, or paper on file in the office of said board." · Article 5246—50 Vernon's Ann. Civ. St. Supp. 1918. A certificate of a nonexisting fact, as here offered, is not authorized. The matter sought to be proven was a matter that could be proven only by oral testimony of the witness or by depositions. Myers v. Jones, 4 Tex. Civ. App. 330, 23 S. W. 562.

The judgment is affirmed.