CADWELL et al. v. DABNEY et al.

No. 9676.

Court of Civil Appeals of Texas. Austin.

Jan. 7, 1948.

Appellees' Rehearing Denied Jan. 21, 1948.

Appellants' Rehearing Denied Feb. 4, 1948.

Robert C. Johnson and Lee T. Johnson, Jr., both of Dallas, for appellants.

Cox, Brown, Daniel & Curtis, and W. R. Brown, of Temple, for appellees.

HUGHES, Justice.

Dr. W. F. Etter died testate on May 14, 1945.. He was survived by his widow, Mrs. Cretys Shipp Etter, hereinafter called appellee, a daughter by a former marriage, Mrs. Lois Etter Cadwell, hereinafter called appellant, and a daughter of his second and last marriage, Mrs. Lorraine Etter Whittington.

Appellee elected not to take under the will of deceased but to stand upon her community interest in the community estate, her claim that certain of the property attempted to be disposed of by the will was her separate property and upon a separately owned claim against the estate evidenced

by a note for $1,000, in which she was payee and the decedent payor.

Trial was to the court without a jury. Findings of fact and conclusions of law were made and filed and in accordance therewith judgment was rendered, as to the items of which complaint is made on this appeal, as follows:

(1) That Lots 8, 9 and 10, Block 16, original town of Rogers, were owned by appellee in her separate right.

(2) That a savings account in the Citizens National Bank of Cameron in the sum of $2,349.65, was owned by appellee in her separate right.

(3) That a cashier's check in the sum of $500 was owned by appellee in her separate right.

(4) That a claim against the estate of Dr. W. F. Etter, deceased, be established in favor of appellee in her own separate right for the principal sum of $1,000 and interest thereon in the sum of $24,231.60, evidenced by decedent's note payable to appellee, dated June 4, 1913, and due January 1, 1914.

Item (1).

Dr. Etter and appellee were married December 17, 1902. At the time of his marriage Dr. Etter owned a horse and buggy and a $200 payment made on a lot in Rogers.

Appellee at such time had $1,000 in cash, a present from her father, who died in 1902. From his estate, which was settled some four or five years after his death, appellee received $4,500 in cash. Appellee's mother died in 1912 and from her estate she received $2,000 in cash.

The property in question was acquired from William Brooks and wife by deed dated December 2, 1909, which recited payment of $3,500 cash consideration by Mrs. Cretys Etter, and the conveyance was to Mrs. Cretys Etter. The deed did not recite that she took the property in her individual right or as her separate estate.

Appellee testified that she had kept her "inheritance money" at home in cash. That she desired to invest it and upon hearing that the Brooks's were moving to Arkansas, the sale of the property was negotiated and was closed at the First National Bank in Rogers in the presence of the bank officials and Mrs. Luther Moore, a sister of appellee. Dr. Etter was not present. When appellee offered Mr. Brooks $3,500 in cash, he objected, saying he did not wish to travel with that much money, and appellee deposited the money in the bank and gave a check in lieu of the cash. A sister who was present in appellee's home when this property was purchased testified that appellee had a lot of money in the house and at her request she counted the $3500 and handed it to her.

Other witnesses testified to statements made by Dr. Etter that the property belonged to his wife.

From appellant's point of view the evidence shows that the property was acquired during the marriage. That Dr. Etter rendered the property for taxation and paid the taxes on it for many years. That appellee for a number of years kept boarders, took in sewing, and made money from cows and chickens. Appellant in her brief states that the money so earned by appellee was community and that it was commingled with her separate funds to such an extent that the separate money cannot be or was not traced into the purchase of these lots. We, of course, agree that the money earned in the above ways by appellee was community property. Appellant makes no specific reference to the statement of facts where evidence of commingling may be found, and we are unable to find any such evidence. The testimony is vague as to when appellee earned money in the manner shown, whether before or after the purchase of these lots.

That the Doctor rendered the property and paid taxes on it is not conclusive and, in our opinion, of but little weight. The husband usually does such things. The income from this property would be community and it would be but fair that the community pay the taxes.

In our opinion, the evidence is sufficiently clear and satisfactory to rebut the statutory presumption that these lots were

community property, and that the finding of the trial court awarding these lots to appellee as her separate property must be sustained.

Item (2).

On April 17, 1945, Dr. Etter, about, one month prior to his death, executed the following instrument in the manner indicated:

"Citizens National Bank,

"Cameron, Texas.

"Gentlemen:

"This will be your authority to change savings account No. 1691 now standing in the name of Dr. W. F. Etter in your bank with a balance of $2349.65 as of this date to my wife, Mrs. Cretys Etter, to be owned and handled by her as suits her convenience.

"Very truly yours,
"Dr. W. F. Etter
"X His Mark.

"Witnesses:

"Miss Susie Vaught

"Mrs. J. R. Whittington."

Appellee's sister, Mrs. Moore, testified:

While Dr. Etter was in the hospital, shortly before his death, "he said he had a savings account in Cameron, that he wanted to transfer it to Crete (appellee)," and that "he wanted to give that savings account to her."

Mrs. Shelley, a sister of appellee, gave similar testimony.

It was stipulated that on or about the date of its execution the above instrument, was presented to the bank and transfer of the funds from Dr. Etter's account to appellee was made.

Unless the above transaction constitutes a valid gift the funds in question belong to the community estate.

There is considerable evidence concerning the physical condition of the Doctor at the time of, and circumstances attending, the execution of the above instrument, which we do not summarize, for the reason that appellant's point as to this portion of the judgment is limited to the assertion that the evidence is insufficient to establish an unconditional intent on the part of deceased to make a gift and to show an un-conditional delivery of said account to appellee.

The principal authority cited by appellant is Cogdill v. First National Bank of Quitaque, Tex.Civ.App., 193 S.W.2d 701.

The instrument involved in that case was a bank draft drawn by deceased in favor of his brother and brother-in-law. The evidence showed and the court found that such draft was drawn and the money paid over to these relatives in order to preserve it for the benefit of deceased and to prevent "somebody back in Mexico" from getting the money. There was no testimony that deceased ever expressed to any one an intention to give his money to his brother and brother-in-law.

There is quite a distinction between an ordinary bank draft and the instrument which Dr. Etter made. A draft merely authorizes the bank on which it is drawn to pay certain funds to the payee and to charge the account of the maker. The purpose in giving the draft and the use or disposition to be made of the funds would depend upon collateral facts.

Delivery of the funds was completed prior to the death of Dr. Etter. The language of the transfer instrument and the verbal statements of Dr. Etter are, in our opinion, sufficient to evidence an intention on his part to vest in appellee unconditionally and immediately the ownership of these funds and the trial court's judgment in this respect must be sustained.

Item (3)

Appellee had in her possession a cashier's check for $500, payable to herself. Mrs. Mamie Shelley, sister of appellee, testified that Dr. Etter had borrowed $300 from her and at the Doctor's request appellee gave her a check for $300 in payment of this loan. That she, Mrs. Shelley, gave this $300 to appellee, which was accomplished by appellee handing Mrs. Shelley $200 in cash, and Mrs. Shelley buying the cashier's check with the cash and the $300 check.

It is clear that Mrs. Shelley made a gift of $300 to appellee and that this much of the $500 cashier's check is her separate property.

Appellee, in her brief, does not refer to any evidence showing the source of the $200 cash which she put into the cashier's check. This $200 was presumptively community property and we have found no evidence in the statement of facts sufficient to overcome this presumption. The trial court therefore erred in decreeing the entire $500 cashier's check to be the separate property of appellee.

Item (4).

The $1,000 note involved was dated June 4, 1913, due January 1, 1914, payable to appellee and bearing the name of her husband as maker. The note recited that the funds were advanced from appellee's personal estate.

Appellant maintains that the evidence is insufficient to show execution and delivery of the note, she having filed a plea of non est factum.

Appellee had possession of the note, it having been in her private bank box. Mrs. Moore and her husband both testified that they were familiar with Dr. Etter's signature and that the note bore his signature.

Several witnesses testified to statements made by Dr. Etter in which he admitted owing his wife $1,000; one such admission having been made but a few weeks prior to his death.

There is no evidence as to payment or non-payment of interest on the note.

█ We consider this evidence sufficient to support the finding of the trial court that the note was executed and delivered by Dr. Etter and also sufficient to overcome any presumption of payment of the note which arises from its antiquity. Griffin v. Hale, 131 Tex. 152, 112 S.W.2d 1042. The trial court did not err, therefore, in establishing the principal of the note as a separate claim of appellee against the estate of her deceased husband.

█ The finding and judgment as to interest on this note, however, cannot be sustained. Interest paid or accrued on a note belonging to the separate estate of the wife would be community property. Arts. 4614 and 4619, Vernon's Ann.Civ.St. Cruse v. Archer, Tex.Civ.App., 153 S.W.2d 679. If appellee is permitted to recover this interest it would be for the benefit of the community estate, the result of which would be that the community would be enriched by the same amount it became indebted. Each would offset the other.

In Frame v. Frame, 120 Tex. 61, 36 S. W.2d 152, 153, 154, 73 A.L.R. 1512, the court, in a similar situation, had this to say: " * * * if such proceeds would be community property, the effect of the recovery (by the wife) would be vain and of no practical effect—it would merely be to take certain money from the estate to be returned to the estate."

This case appears to have been fully developed in the court below and we will render the judgment which the trial court should have rendered.

Appellee's separate interest in the $500 cashier's check is reduced to $300. The amount of interest on the $1,000 note, $24,-231.60, is eliminated from the claim established in favor of appellee against the estate of Dr. W. F. Etter. The judgment is in all other respects affirmed.

Costs of this appeal are taxed against appellee.

Reformed and affirmed.

On Appellees' Motion for Rehearing.

Complaint is made of our failure to sustain appellee's first and second cross-assignments of error.

█ The first cross-assignment relates to the refusal of the trial court to allow attorney's fees upon the $1,000 note referred to in our original opinion. This note was not set out in hæc verba in appellee's pleadings, and that the note provided for attorney's fees was not alluded to in such pleadings, and her prayer was simply that the note with interest thereon from June 4, 1913, at the rate of 10% per annum be "recognized as a general claim against the estate of the deceased and paid in due course of administration." The pleadings, therefore, did not authorize recovery of attorney's fees. Nor are we in accord with appellee's suggestion that this defect in the pleadings has been waived by appellant's failure to object to the introduction of the note because of this defect in the pleadings under Rule 67, Texas Rules of Civil Pro-

cedure. The note was admissible upon other issues and appellant was not required to make a futile objection; nor was it her duty to suggest that appellee amend her pleadings so as to enlarge her demand. If attorney's fees had been sued for appellant would have been afforded the opportunity of contesting the reasonableness of the amount claimed. The record does not disclose that attorney's fees were mentioned upon the trial of this case (other than being provided for in the note offered in evidence) and we cannot say that issues relating thereto were tried by consent.

The second cross-assignment of error relates to the failure of the trial court to establish a claim in appellee's behalf to the extent of one-half of $7,425, community funds invested by Dr. Etter in U. S. savings bonds, less the amount of such bonds which appellee received.

Three bonds are involved, one, cost value $2,550, payable to appellant; one, cost value, $2,550, payable to Mrs. Whittington, and the other, cost value, $2,325, payable to appellee. The difference between one-half of the funds expended and the amount appellee received being $1,387.50.

Appellee contends that this use, or donation, of community funds constitutes constructive fraud upon her rights in the community estate.

Appellee did not appeal from the judgment of the trial court. In appellant's appeal bond it is recited that appellee had recovered "judgment adversely affecting the interests" of appellant and that she had excepted to "said judgment" and given notice of appeal.

In Dallas Electric Supply Co. v. Branum Co., Tex.Civ.App., 185 S.W.2d 423, 430, 427 (Com.App. opinion adopted), the court, in discussing the right to make and the scope of cross-assignments of error, made this pronouncement: "This rule of practice, which does away with the necessity for prosecuting two appeals from the same judgment and bringing up two records, is well founded and should not be departed from except in cases where the judgment is definitely severable and appellant strictly limits the scope of his appeal to a severable portion thereof."

There were many items or different pieces of property or property rights involved in this case, each depending upon facts peculiar to each and each of which might have been the subject matter of a separate suit. The judgment denying appellee relief as to these funds was distinct and severable from other portions of the judgment. This portion of the judgment was favorable to appellant and since she limited her appeal to those parts of the judgment which were adverse to her, we are of the opinion that this cross-assignment of error is not properly before us for review.

Furthermore, it appears that the issue as to these funds was injected into the case by a trial amendment filed by appellee in which she prayed that her claim in the amount of $1,387.50 be "charged against the undivided one-half interest in said community estate inherited by the said Lois Etter Cadwell (appellant) and Lorraine Etter Whittington * * *." Mrs. Whittington was a party and the judgment on this issue being in her favor she became a co-appellee with appellee, and the rule is well settled that "an appellee must perfect an independent appeal before he may cross-assign error as to a co-appellee * * *." 3 Tex.Jur., § 609, as cited in Sherman v. Stein, Tex.Civ.App., 173 S.W.2d 732.

Appellant and Mrs. Whittington were jointly interested in this portion of the judgment and the presence of both in this court would be required for an orderly and effective disposition of the issues pertaining thereto.

For this additional reason we are not authorized to determine the validity of this portion of the judgment.

Appellee vigorously assails our holding that the interest accumulated on the $1,000 note was community property and in support of her claim that such interest is her separate property cites the following cases. Hall v. Hall, 52 Tex. 294, 36 Am.Rep. 725; Martin Brown Co. v. Perrill, 77 Tex. 199, 13 S.W. 975, and Hamilton Brown Shoe Co. v. Whitaker, 4 Tex.Civ.App. 380, 23 S.W. 520.

The opinion in the Hall case was by Justice Bonner and was rendered December 11,

1879. The suit was by a widow against the estate of her deceased husband to collect principal and accrued interest upon a note executed in her favor by deceased for her separate funds which had been lent to him. The court, after stating that under our present and former constitutions a wife could own both separate and community property in her own right, referred to the rule that a husband could give or grant his separate property or his interest in the community property direct to the wife without the intervention of a trustee. The court then cites cases holding that notes and mortgages given by a husband to his wife are valid and binding obligations. The decision of the court follows in this language: "We are of the opinion that the note here sued upon, given by M. J. Hall, senior, to his wife, Julia B. Hall, in consideration of her separate money loaned to him, is a valid and binding contract, and that it was such a declaration of his intention that the principal and interest, both which are expressly promised to be paid by the terms of the note, should remain her separate property, that it should have this effect."

The opinion in the Martin Brown case was by Justice Gaines. In this case it appeared that a mercantile firm borrowed money from the wife of one of its members giving a note to her husband as trustee. The money was the separate property of the wife. She sued the firm and attached its goods. Other creditors intervened seeking to defeat her attachment. The wife recovered both the principal of and interest on her note. This judgment was affirmed, but upon what ground is not clear, as is shown by the following excerpt from that opinion [77 Tex. 199, 13 S.W. 977]: "Appellants insist that the judgment is erroneous in so far as it allows plaintiff a recovery for the interest on the money derived from the sale of the bonds. It is settled law in this state that interest derived from a loan of money, the separate property of the wife, belongs to the community estate. Braden v. Gose, 57 Tex. 37. It is contended that the rule applies in this case, and that the interest was community property of Perrill and his wife, and subject to the payment of his debts, and that, therefore, there should have been no recovery

for the interest as against his creditors. The court concurs in the opinion that appellants' contention cannot be maintained, and we agree substantially in the result, that the judgment is in this particular correct. As to the grounds of that conclusion, we are not in accord. One opinion is that it is the income, and not the corpus, of the fund that was bequeathed to the plaintiff by her grandfather, and that, therefore, the interest on the money comes literally within the definition of 'separate property,' as given in the statute; that is to say, that the income of the fund is acquired directly 'by devise.' Rev.St. art. 2851 [Vernon's Ann. Civ.St. art. 4613]. The other opinion is that when the husband borrows the money of the wife, and agrees to pay her interest, the effect of the contract is to make the interest her separate property. Hall v. Hall, 52 Tex. 294."

In the Hamilton Brown case the Court of Civil Appeals instructed the trial court in remanding the case that interest upon a loan made by a wife to her husband from her separate funds would be her separate property, citing the Hall and Martin Brown cases.

In Braden v. Gose, 57 Tex. 37, Judge Stayton said: "In the case of Hall v. Hall, 52 Tex. 294 it was held that the interest due on the note made to the wife by the husband was her separate property; but this was upon the ground that the husband's contract made it so."

Our respect for the decisions of the eminent justices who wrote the above opinions makes us hesitant and very reluctant to say that many later decisions of the Supreme Court are not in accord with the views or holdings in the cases mentioned above.

■ A husband and wife do not have the power to change, by mere agreement, made in advance, the status of community property yet to be acquired, and yet to come into existence, to that of the wife's separate property. Brokaw v. Collett, Tex. Com.App., 1 S.W.2d 1090; Gorman v. Gause, Tex.Com.App., 56 S.W.2d 855; Strickland v. Wester, 131 Tex. 23, 112 S.W. 2d 1047; Frame v. Frame, 120 Tex. 61, 36 S.W.2d 152.

Bearing in mind that none of the interest on the $1,000 note was ever paid to appellee, there is no basis upon which a gift of such interest to appellee can be supported.

In Strickland v. Wester, supra [131 Tex. 23, 112 S.W.2d 1048], the court said: "The general agreement that her (wife's) personal earnings should become her separate property did not operate as a gift to her of the particular funds * * *."

In Chandler v. Alamo Mfg. Co., 140 S.W. 2d 918, 920, this court held: " * * * if he (the husband) gave the rents to his wife prior to the time they accrued, the gift was void because he could not give her the rents before they accrued."

In Davis v. Davis, Tex.Civ.App., 108 S.W.2d 681, 686, the court said: "We are of opinion that in order for the personal earnings of the wife, which were earned month by month according to the testimony in this case, to be changed from that of the community estate to her separate estate, it would be necessary for the husband each month, as the salary was earned, to make a gift of the same to his wife."

In Armstrong v. Turbeville, Tex.Civ. App., 216 S.W. 1101, 1106, writ dismissed, the court held:

"It is true, as asserted by appellant, that husband and wife cannot by mere postnuptial agreement between themselves change the character of their property to be thereafter acquired so as to convey community into separate property. Cox v. Miller, 54 Tex. 16; Engleman v. Deal, 14 Tex.Civ.App. 1, 37 S.W. 652; Suggs v. Singley [Tex.Civ.App.], 167 S.W. 241; Speer's Law of Marital Rights, §§ 50, 297, and cases there cited.

"But this rule has no reference to the well-recognized right of the husband to make to his wife a gift of his interest in the community property then in esse, when it can be done without injury to the rights of others. Jordan v. Marcantell [Tex.Civ. App.], 147 S.W. 357. This is simply doing with his property what he has the right to do. Hence, while it may be conceded that the community status of the rents collected was not affected by the mere agreement between Turbeville and his wife, made when he conveyed the property to her yet if this agreement was thereafter observed and

actually carried out, and the rents delivered into possession of the wife, as the evidence discloses and the jury has found, then the collected rents became the separate property of Mrs. Turbeville, unless the gift was in fraud of the rights of creditors. Jordan v. Marcantell, supra; Bruce v. Koch [Tex.Civ.App.], 40 S.W. 626."

Dr. Etter mentioned several times that he owed his wife $1,000. He never intimated that he owed an additional $24,000 interest.

 We, therefore, hold that if the note be construed as an agreement to give appellee the interest it is unenforceable; and the interest never having been paid by Dr. Etter nor collected by appellee, no valid gift is shown.

The motion for rehearing is overruled.

Overruled.